### NCR Universal Credit Union
### v.
### Kleinberg
*[Cite as 2 AOA 94]*

*Case No. 11807*
*Montgomery County, (2nd)*
*Decided April 16, 1990*

*R.C. 1309.47*

*Thomas W. Simms, One River Park Drive, P. O. Box 467, Dayton, Ohio 45409, Attorney for Plaintiff-Appellee.*

*Thomas Eagle, 3737 S. Dixie Highway, Franklin, Ohio 45005, Attorney for Defendant-Appellant.*

WOLFF, P.J.

NCR Universal Credit Union (NCR) filed a complaint against Donna Kleinberg in the Dayton Municipal Court on a promissory note seeking $6008.34, plus interest from 16.95% per annum from November 30, 1987. The amount sought represented a deficiency resulting from the sale of Kleinberg's 1984 Jeep, which collateralized her debt to NCR. Kleinberg answered and counter-claimed for damages, attorney fees, and costs.

The parties eventually filed motions for summary judgment. The trial court sustained NCR's motion, granting judgment as prayed for, and overruled Kleinberg's motion.

On appeal, Kleinberg advances two assignments of error: (1) the trial court erred in sustaining NCR's motion and (2) further erred in overruling Kleinberg's motion.

The controversy in the case primarily involves NCR's sale of the collateral, the 1984 Jeep, which NCR repossessed on September 3, 1987 and sold on November 21, 1987. Kleinberg contends that the evidence established violations of R.C. 1309.47(C) in that (1) the notice of sale was unreasonable and (2) the sale of the Jeep

itself was commercially unreasonable.

The only written notice of sale, dated September 5, 1987, was sent to Kleinberg at 9533 Roberts Road, Franklin, Ohio 45005, which had been NCR's official address for Kleinberg since December, 1985.

This notice announced that the Jeep would be sold at public sale October 3, 1987, at 10:00 a.m., at Tri State Auction in Franklin.

The notice was returned to NCR "unclaimed." Kleinberg argues at length that this was unreasonable notice because NCR was on notice that 9533 Roberts Road was not Kleinberg's address in September, 1987. This contention was based on the fact that a "cure letter" sent to Kleinberg a year earlier in September, 1986, which was also returned to NCR "unclaimed," showed Kleinberg's "new address" to be 6349 Bunnell Hill Road, Lebanon. We are not impressed with this argument because Kleinberg herself testified in a deposition that she lived at 9533 Roberts Road from November 1, 1987, until February, 1988, and that before she lived on Roberts Road, she lived at 8401 Claude Thomas Road, and that she lived and received mail to 6349 Bunnell Hill Road "for a very short time" *in 1986.* Nevertheless, we believe that there was a genuine issue of material fact as to where Kleinberg lived on September 5, 1987, such as to foreclose a determination as a matter of law that the returned "unclaimed" notice was reasonable notification. *Id.* Indeed, the notice issue as it relates to the October 3 sale date is of little consequence because the sale didn't occur on that date. After the Jeep was repossessed, Kleinberg attempted to redeem the Jeep and the October 3 date was cancelled by NCR.

Of greater consequence to us on the notice of sale issue is whether, as a matter of law, the trial court could have found reasonable notice of the actual sale of the Jeep which occurred not on October 3, as indicated in the notice, but on November 21, 1987, after Kleinberg's last effort to redeem the car failed.

As it relates to notice of sale, R.C. 1309.47(C) provides:

"Unless collateral is pershiable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor if he has not signed after default a statement renouncing or modifying his right to notification of sale.

James Toerner, the administrator of NCR's credit adjustment department, stated at paragraphs 8-11 of his affidavit:

"(8) On or about September 21, 1987, Donna Kleinberg came to the Credit Union's McCall Street Office and arranged to pay the repossession charges, provide proof that she had insurance on the vehicle, and agreed to pay one-half of the delinquency on the loan; she was therefore to have paid one-half of $1,792.00. In light of this agreement, the car was withheld from the October 3 sale and she gave two checks totaling $440.00 towards the amount she was to have paid.

"(9) The two checks for $440.00 were deposited in Donna kleinberg's savings account, where the funds were to remain until she came up with the balance of the money and the proof of insurance. Both of these checks were returned through banking channels due to nonsufficient funds. In accordance with standard procedures, the Accounting Department returned these checks via the U.S. mail to Donna Kleinberg.

"(10) Donna Kleinberg made no further payments. Additionally, she failed to make her October and November, 1987 payments and, other than dropping documents purporting to show that she had insurance on the automobile in the mail, she made absolutely no contact with the Credit Union.

"(11) Although the written records do not reflect it, affiant believes that it was clear that the automobile would be sold during the coming weeks of November, 1987, if Ms. Kleinberg did not comply with her arrangements. Due to the fact that she did not make any payment towards the agreed charges and skipped her October and November payments, it was quite clear that she had abandoned any attempts to redeem the automobile."

This is NCR's strongest evidence of its notification, if any, to Kleinberg of the November sale. Admittedly, NCR gave no written notice to Kleinberg of time and place of the sale, although she undoubtedly knew where the car was located because she had gone to the storage facility to retrieve the tags.

Although, in certain circumstances, a failure to provide written notice of sale is not fatal, see *Umbaugh Pole Building v. Scott* (1979), 58 Ohio St. 282, this is not such a case. Unlike *Umbaugh*, there is nothing in the evidence to suggest that Kleinberg knew *the date* the Jeep would be sold if she failed to redeem it. Toerner's affidavit did

not justify the trial court's implicit determination that, as a matter of law, reasonable notice had been given. Indeed, given the lack of any evidence that Kleinberg knew *when* in November the Jeep would be sold, the trial court should have determined as a matter of law that NCR did not give Kleinberg the "reasonable notification" of sale required by R.C. 1309.47(C).

Turning to the question of whether the evidence established, as a matter of law, that the sale of the Jeep was commercially reasonable, we again look to the affidavit of Turner:

"(12) The sale of the automobile was handled by Tri State Auto Auction, Inc., in Franklin, Ohio. Said organization did in fact advertise that Ms. Kleinberg's automobile would be sold in the Dayton Daily News - Journal Herald on November 8, 1987 and likely on one or two other occasions in other newspapers, as is their general procedure. The sale was thus made in the usual manner, in a recognized market, in conformity with reasonable commercial practices among dealers of this type of property.

(13) The condition report on the vehicle indicates that there was body damage in form of dents and scratches on both sides of the vehicle as well as the front. The high bid was $4,650.00. In light of the condition of the automobile, this bid was felt to be quite reasonable and was accepted by the Credit Union.

14) In the sale of Ms. Kleinberg's automobile, as well as all other automobiles repossessed and sold by the Credit Union, we attempt to get the best obtainable price."

Nothing competes with NCR's evidence that the sale was conducted in a commercially reasonable manner. The fact that NCR did not clean the vehicle prior to sale is not significant. R.C. 1309.47(A).

Although NCR conducted the sale in a commercially reasonable manner, it was still not entitled to summary judgment because of its failure to provide Kleinberg with reasonable notification of the November sale. See *Liberty Bank v. Greiner* (1978), 62 Ohio App. 2d 125.

Kleinberg also contends, and we agree, that summary judgment in favor of NCR was inappropriate because there was a genuine issue of material fact as to whether she and NCR entered into an accord and satisfaction which prevented NCR from selling the repossessed Jeep.

Kleinberg also contends that NCR's alleged violations of the Consumer Sales Practices Act should have prevented NCR's obtaining summary judgment, and mandated summary judgment in her favor.

We agree with NCR that R.C. 1345.01 et seq., the Consumer Sales Practices Act, is not implicated in this case. R.C. 1345.01(A), defining "consumer transaction," specifically excludes "transactions between persons, defined in (R.C. 5725.01), and their customers." R.C. 5725.01(A), in turn, defines "financial institution" as including "every person who...engages in the business of receiving deposits, lending money...." At oral argument, counsel for Kleinberg conceded that NCR is a "financial institution" and that its lending money to Kleinberg, and taking a security interest in her Jeep, was not a "consumer transaction" as defined at R.C. 1345.01(A). Nevertheless, she persists in her contention that NCR's attempt to collect the debt was itself a consumer transaction. The definition of "consumer transaction" at R.C. 1345.01(A), however, simply belies this contention. *Celebrezze v. United Research, Inc.* (1984), 19 Ohio App. 3d 49, cited by Kleinberg, does not support her position. That case merely holds that the assignee of a supplier, as defined at R.C. 1345.01(C), would be treated a supplier, for purposes of the Consumer Sales Practices Act. The assignee in that case was a collection agency. The seller, i.e. "supplier," United Research, Inc., would assign its retail installment contracts to Universal Acceptance Corp., a collection agency, which would in turn file suit in the Akron Municipal Court against purchaser-debtors who lived outside Ohio, or outside the territorial jurisdiction of the municipal court, a practice that was unfair within the contemplation of R.C. 1345.02(A). See also *Brown v. Willard* (1977), 5 OO 3d 195.

Because it is clear that NCR did not give Kleinberg reasonable notification of the sale of the Jeep, the trial court erred in granting summary judgment to NCR and the first assignment of error is sustained.

For the same reason, the trial court erred in not granting summary judgment to Kleinberg to the extent that she sought to deny NCR a deficiency judgment. There appearing to be a genuine issue of material fact as to whether Kleinberg is entitled to damages under R.C. 1309.50(A), and R.C. 1345.01 et seq. having no application, the trial court did not err in not awarding damages to Kleinberg. The second assignment is sustained in part and overruled in part.

The summary judgment in favor of NCR will be reversed, and this case will be remanded for further proceedings not inconsistent with this opinion, including whether Kleinberg is entitled to damages under R.C. 1309.50(A).

*Judgment reversed,*
*and cause remanded.*

BROGAN, J. and FAIN, J., Concur.